[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case came to this court for a trial on a limited contested dissolution. The parties stipulated as to custody and visitation which will be set forth hereinafter.
The parties were married on May 10, 1958 at New York, New York. The wife's maiden name was Joan M. Good. The plaintiff has resided in this state continuously for at least 12 months preceding the date of the filing of the complaint. There were six children born of the marriage. There is one minor child issue of the marriage, to wit: Kathleen Gomola, born December 12, 1974. Neither the State of Connecticut nor any municipality is contributing to the support or maintenance of the family.
The parties are married 33 years. The wife is 56 years , old and the husband is 59 years old. The youngest daughter, age 17, is an unwed mother and lives at home with her family and is dependent on them for her support. The court finds that she is not emancipated and is still a dependent child.
The wife raised the children and maintained the house in a somewhat traditional role in the family. (In addition, the wife worked for a substantial part of the marriage.) The wife's last job was as a director of nurses at the County Schools, which was a school for nurse training. She was earning $560.00 a week. She injured her rotator cuff and a disc in her back when she had to catch a patient who was falling. She had surgery on her shoulder on September 30, 1991, and is presently collecting disability income of $400.00 a week. The court finds that to be her present earnings. The most money she ever earned was in 1988 when she was employed by County Schools which has since gone out of business.
The husband has worked continuously during the course of the marriage and has worked for over 30 years at Textron Lycoming, formerly Lycoming, a manufacturer of airplane engines, as an inspector. He has always had extra jobs. They involved police work, overtime, and the like. Even during strikes, he found work. CT Page 10897
The home that they occupy was purchased in 1962 for $17,500.00, $5,000.00 in cash went onto the property. In addition, the house had substantial improvements done in 1977 when a second story was added onto the house. Testimony from an independent witness indicated that the husband had done the bulk of the work on that second story addition. There is some dispute as to what is the current value of the premises. The wife shows it at a $175,000.00. The husband shows it on his current affidavit at $225,000.00 but showed it as $170,000.00 on an affidavit filed in April, 1991.
Both parties have recited their own versions of the problems that occurred in the marriage. Suffice it to say that, even after the dissolution of marriage action was commenced, the husband requested reconciliation under the statutes. So at least in his mind the marriage was worth saving as late as April, 1991. Over the years, the parties have made various accommodations, one to the other, to address some of the problems that they perceived in the marriage. A marriage of 33 years is, indeed, lengthy by today's standards. It would do neither party any good for the court to recite all of the problems in the marriage, but suffice it to say that it involved disputes as to parenting, disputes as to housekeeping, disputes as to finances, disputes as to sexual intimacies, and the use of foul language in the home. The court finds that the marriage at this time has broken down irretrievably.
The husband's earnings for 1991 are shown in part on plaintiff's exhibit 4. Through December 1, 1991, he earned $56,204.80. There are four weeks in December at the $730.00 amount that he shows on his affidavit (it may be that it is $745.00 per week as shown on the exhibit, but in order to give him the benefit of the doubt, I am using his figures) adding another $2,920.00 so that he would have earned for 1991 $59,124.00 gross or $1,137.00 per week. He claims that he is not working any part time jobs nor is he working overtime and .that his work as a part time police officer has dropped off to $6.00 per week.
The husband's future earning capacity and present actual earnings exceeds that of the wife. The court finds that he is presently earning $437.00 net per week.
The court finds it has jurisdiction. The court has listened to the parties and to their witnesses and reviewed all of the exhibits in the case. In addition, the court has taken into consideration all of the criteria set forth in Connecticut General Statutes 46b-81, Assignment of Property and Transfer of Title, 46b-82, the alimony statute, 46b-62, the attorney's fees statute, 46b-84, the child support statute and the child CT Page 10898 support guidelines, and all other relevant statutes. In addition, the court has reviewed the financial affidavits of the parties and listened to the arguments of counsel. Accordingly, the court orders as follows:
1. The marriage is dissolved on the grounds of irretrievable breakdown.
2. Custody of the minor child, Kathleen Gomola, shall be with the wife with rights of reasonable and flexible visitation with the child by the father upon reasonable notice to the wife. All visitation shall be arranged directly between the father and his daughter.
3. The court has applied the guidelines to the net weekly income of $437.00 and finds that amount to be $128.00 per week. The court finds no reason to deviate from the criteria and orders child support of $128.00 per week.
4. The husband shall pay alimony to the wife in the sum of $90.00 per week. Said obligation to pay alimony shall cease and terminate on the death of either party, the remarriage of the wife or her cohabitation as defined by Connecticut General Statutes 46b-86b.
5. The husband shall maintain medical and, if available, dental insurance for the benefit of the minor child for so long as he is obligated for child support. Any unreimbursed medical and dental expenses shall be shared equally by the parties. All reimbursement shall be made promptly by the husband to the wife for his share of any unreimbursed medical and dental expenses which she makes on behalf of the minor child. The husband shall maintain the wife on his medical insurance for the maximum time allowed by COBRA and shall pay that expense for one year from the date of this decree. The wife shall use her best efforts to obtain employment where medical insurance is available so that the husband shall be removed from that obligation. The unreimbursed medical expenses of the daughter for her childbirth are not the husband's and wife's responsibility.
6. The wife shall have exclusive possession of the premises with her minor child. The house, if not sooner sold, shall be sold five (5) years from the date hereof. The wife shall be responsible for the first mortgage and all other expenses in connection with the real property including but not limited to taxes, homeowners insurance, utilities, and repairs. On the sale, the wife shall receive eighty (80%) of the net proceeds and the husband shall receive twenty (20%) per cent of the net proceeds. Net proceeds are CT Page 10899 defined as proceeds after paying off the mortgage, if any, costs of the sale including broker's commission, if any, legal fees for the sale, and all normal expenses such as real estate conveyance taxes and the like.
7. The husband shall contribute towards twenty (20%) per cent of the cost of any major repairs. Major repairs are those repairs that cost in excess of $250.00 for each service. By way of example, if the repair cost is $300.00, then the husband will contribute $60.00 and the wife shall pay $240.00. If the repair cost $200.00, then the husband need not make any contribution.
8. The contents of the home shall be the property of the wife except that the husband shall have his clothes, personal effects, one half of the tools, his fishing gear and guns. All items shall be removed within thirty (30) days of the date of dissolution.
9. The husband shall retain any and all right to his pension and savings plan, his 401K account, his IRAs and credit union account.
10. The husband shall make a contribution towards the wife's attorney's fees in the sum of $3,500.00 within 120 days of this decree.
11. The husband shall maintain, for the benefit of the wife, as long as he is paying her alimony, the insurance shown on his financial affidavit which shows four Knights of Columbus policies totalling $31,875.00 and any company provided life insurance up to a total maximum amount of coverage of $50,000.00. The amount to be carried is an amount net of loans. Presently he has approximately $6,000.00 worth of loans which means that he must carry $56,000.00 worth of insurance in order to net out the $50,000.00. This order does not require him to purchase additional insurance, but rather, to use what he has existing. If he has no company insurance, then he is ordered to carry only the Knights of Columbus insurance, but if his next employment provides available insurance, he is to obtain it to the amount set forth herein.
12. The husband shall bring current all pendente lite order arrearages, if any, regarding the mortgage and utilities and the like within ten (10) days of this order.
13. The husband shall be responsible for one half of the Master Card debt shown by the wife on her affidavit as $4,900.00. CT Page 10900
14. The husband shall be responsible for one half of the doctor bills for the daughter that are currently outstanding that do not pertain to the child born out of wedlock. The husband shall not be responsible for those bills since the daughter, through the custodial parent, has the right to seek relief in another forum against the responsible father of the child.
15. The wife shall retain her IRA and all of her other personal property not heretofore addressed in this decision.
16. The husband shall keep all of his personal property not hereinbefore addressed in this decision.
17. Except as hereinbefore set forth each of the parties shall pay their debts under the liability sections of their affidavits.
EDWARD R. KARAZIN, JR., JUDGE.